UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RECO VALARIE CAUTHEN,

          Plaintiff,

v.                                 Case No. 5:20-cv-371-BJD-PRL

LIEUTENANT BLACKMON,
et al.,

          Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff, Reco Valarie Cauthen, an inmate of the Federal Bureau of Prisons (BOP), is proceeding in this action on an amended civil rights complaint under Bivens[1] (Doc. 16; Am. Compl.). Plaintiff names as Defendants Lieutenant Blackmon, Officer Wise, Officer Davis, and Nurse Mathews. Plaintiff alleges he had a heart attack inside his cell on August 30, 2019, and, when he told Defendant Officer Wise that he needed medical attention, Wise notified Defendant Lieutenant Blackmon, who entered Plaintiff's cell and "assaulted [Plaintiff] breaking [his] arm in [two] places." Am. Compl. at 5. Defendant Blackmon took Plaintiff to be evaluated by Defendant Nurse

_____

[1] Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Mathews, but Defendant Mathews "placed [him] back in [his] prison cell for 14 hours." Id. The following morning, Plaintiff notified Defendant Mathews he still needed medical attention, and he was then "rushed to the E.R. at Leesburg Regional Medical Center." Id. Plaintiff remained in the hospital for five days. Id. He was diagnosed with broken bones and a heart attack. Id. Plaintiff contends Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Id. at 3. As relief, he seeks an order terminating "the staff members responsible for [his] pain [and] suffering"; surgery for his shoulder; and compensatory damages. Id.

Before the Court are two motions to dismiss—one by Defendants Blackmon and Davis (Doc. 48; Blackmon Motion), and one by Defendant Wise (Doc. 57; Wise Motion).[2] Plaintiff has responded to the motions (Doc. 49; Pl. Blackmon Resp.) (Doc. 59; Pl. Wise Resp.). As such, the motions are ripe for this Court's review.

---

[2] Despite two efforts by the United States Marshals Service, Defendant Mathews has not been served. See Unexecuted Returns (Docs. 19, 51). Thus, the Court ordered Plaintiff to show cause why Defendant Mathews should not be dismissed. See Order (Doc. 53). Plaintiff responded to the Order to Show Cause (Doc. 55), saying "the BOP is deliberately hiding Nurse Mathews." He says Defendant Mathews is the one who wrote the order for him to be transported to the emergency room on August 31, 2019. Given Plaintiff's contention that Defendant Mathews directed he be transported to the hospital, the Court will permit Plaintiff an opportunity to attempt to identify this Defendant or service through discovery.

## II. Motion to Dismiss Standard

Under the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding pro se, but need not accept as true legal conclusions. Iqbal, 556 U.S. at 678. Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

## III. Analysis

Defendants jointly argue, in nearly identical motions,[3] that Plaintiff's excessive force claim is not cognizable under Bivens after the Supreme Court's decision in Ziglar v. Abbasi, 137 S. Ct. 1843 (2017), and even if it is, Bivens does not extend to official-capacity claims. Def. Motions at 3, 12. Alternatively, Defendants invoke qualified immunity. Id. at 10, 12. Plaintiff's responses to

---

[3] All served Defendants are represented by the same attorney. They submitted separate motions because Defendant Wise was served after Defendants Blackmon and Davis. When citing their motions, if material appears on the same page in both motions, the Court will cite them jointly as "Def. Motions."

the motions are nearly identical and largely unhelpful.[4] Plaintiff merely repeats the relief he seeks in his amended complaint. Pl. Resps. at 1. He does not address Defendants' <u>Bivens</u> argument. Even though Plaintiff does not directly rebut Defendants' legal argument that <u>Bivens</u> does not extend to his excessive force claim, the Court finds it necessary to address that argument given Plaintiff is proceeding <u>pro se</u>, and because he contends "the assault . . . caused by . . . these Defendants [violated his] 8th Amendment rights." Pl. Wise Resp. at 1.

As an initial matter, however, the Court notes that, if an excessive force claim is cognizable under <u>Bivens</u>, Plaintiff's claims against Defendants in their official capacities and his requests for injunctive relief would be subject to dismissal. In a <u>Bivens</u> action, the appropriate remedy is monetary damages, not injunctive relief. <u>See</u> <u>Carlson v. Green</u>, 446 U.S. 14, 21 (1980) (recognizing <u>Bivens</u> extends damages remedies against individuals). Additionally, a <u>Bivens</u> claim may proceed against only an individual actor, not against an entity or agency. <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 474 (1994).

---

[4] The Court will cite Plaintiff's responses jointly as "Pl. Resps."

### A. Excessive Force Under <u>Bivens</u>[5]

In <u>Bivens</u>, the Supreme Court recognized a violation of a citizen's Fourth Amendment right to be free from unreasonable searches and seizures "gives rise to a cause of action for damages" against the offending federal officers. 403 U.S. at 389. <u>See also</u> <u>Carlson</u>, 446 U.S. at 18 ("<u>Bivens</u> established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."). After <u>Bivens</u>, the Supreme Court has recognized an implied damages action for the violation of one's constitutional rights only in two other contexts: gender discrimination in the workplace; and deliberate indifference to serious medical needs in prison. <u>See</u> <u>Ziglar</u>, 137 S. Ct. at 1854-55 (citing <u>Davis v. Passman</u>, 442 U.S. 228 (1979); <u>Carlson</u>, 446 U.S. at 21).

Of particular relevance here, in <u>Carlson</u>, the Court held a <u>Bivens</u> remedy extended to a claim alleging prison officials violated an inmate's Eighth Amendment right to receive adequate medical care, even though the plaintiff also could have sued under the Federal Tort Claims Act (FTCA). 446 U.S. at 19. The Court noted, "[W]e have here no explicit congressional declaration that

---

[5] Given Defendant Mathews has not been served, the Court limits its <u>Bivens</u> analysis to the argument raised by the Defendants who have appeared. However, the Court notes Plaintiff's claim against Defendant Mathews for deliberate indifference to serious medical needs is cognizable under <u>Bivens</u>. <u>See</u> <u>Carlson v. Green</u>, 446 U.S. 14, 19 (1980) (extending <u>Bivens</u> to a claim for the violation of a prisoner's Eighth Amendment right to adequate medical care).

persons injured by federal officers' violations of the Eighth Amendment may not recover money damages from the agents." Id. The Court held an aggrieved prisoner or his survivors should not be limited to a remedy under the FTCA because a Bivens claim for damages "serves a deterrent purpose." Id. at 20-21.

Since deciding the Bivens trilogy (Bivens, Davis, and Carlson), the Court has "changed course," declining to infer a cause of action that is "not explicit in the text of the provision that was allegedly violated." Hernandez v. Mesa, 140 S. Ct. 735, 741 (2020) (quoting Ziglar, 137 S. Ct. at 1855).[6] However, the Court did not overrule the Bivens trilogy and noted that "no congressional enactment has disapproved of these decisions." Ziglar, 137 S. Ct. at 1856. In fact, the Court emphasized that a Bivens claim remains "a fixed principle in the law." Id. The Court stated, "Bivens does vindicate the Constitution by allowing some redress for injuries, and it provides instruction and guidance to federal law enforcement officers going forward." Id. at 1856-57.

While recognizing the continued vitality of Bivens and its progeny, the Ziglar Court instructed that lower courts are to exercise "caution before

---

[6] In acknowledgment that it may have infringed upon legislative territory in the past, the Court recently reiterated and emphasized that "expanding the Bivens remedy is . . . a 'disfavored' judicial activity," and even went so far as to question whether Bivens, Davis, and Carlson would have been decided differently if heard by the Court more recently. Ziglar, 137 S. Ct. at 1856-57 (quoting in part Iqbal, 556 U.S. at 675). See also Hernandez, 140 S. Ct. at 741 (explaining that, when courts, through their "Judicial Power" create new claims for damages, they risk "arrogating legislative power").

extending Bivens remedies into any new context." Id. at 1857. Thus, when confronted with a Bivens claim, courts should engage in a two-step inquiry. First, a court should determine "whether [the] case presents a new Bivens context," or one that "diff[ers] in a meaningful way from previous Bivens cases decided by th[e] Court." Id. at 1859. See also Hernandez, 140 S. Ct. at 743. Second, if a court determines a case does present a new context, then the court should consider whether "special factors" counsel hesitation in extending a damages remedy. Ziglar, 137 S. Ct. at 1857, 1861-62.

### i.   New Context

The Supreme Court has not articulated "an exhaustive list of differences that [would be] meaningful enough to make a given context a new one," but, in Ziglar, it set forth some relevant factors:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Id. at 1859-60. Though the Court in Ziglar identified the "constitutional right at issue" as a relevant consideration, the Court later clarified that the

constitutional right at issue cannot alone be the determinative consideration. Hernandez, 140 S. Ct. at 743.

For instance, in Hernandez, the plaintiffs argued their Fourth and Fifth Amendment claims did not present "a new context because Bivens and Davis involved claims under those same two amendments." Id. The Court rejected that argument because the nature of the claims in Hernandez was markedly different than those in Bivens or Davis. The plaintiffs in Hernandez sought redress from a Border Patrol agent for the cross-border shooting of their son, a Mexican national, which resulted in his death. Id. at 740. The Court noted, "[O]nce we look beyond the constitutional provisions involved in Bivens, Davis, and the present case, it is glaringly obvious that [the plaintiffs'] claims involve a new context." Id. at 743.

In this case, not only is the constitutional provision the same as that involved in Carlson, but other factors the Ziglar Court identified persuade this Court that Plaintiff's excessive force claim does not present a new context. The rank of the officers involved is substantially similar—federal correctional employees. Additionally, judicial guidance in the area of prison conditions and the treatment of prisoners is extensive, meaning there would be no "disruptive intrusion by the Judiciary into the functioning of other branches." Ziglar, 137 S. Ct. at 1860. In fact, one of the preeminent Supreme Court prison-condition opinions involves a Bivens claim. See Farmer v. Brennan, 511 U.S. 825, 829

(1994) (explaining the plaintiff's <u>Bivens</u> claim alleged federal prison officials violated his Eighth Amendment rights by their deliberate indifference to his safety).

As the Court recognized in <u>Bivens</u>, "That damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by federal officials should hardly seem a surprising proposition." 403 U.S. at 395. The same proposition holds true in this context: it should hardly be surprising to federal prison officials that courts and Congress authorize damages awards to vindicate the violation of an inmate's Eighth Amendment right to be free from cruel and unusual punishments, at least when the prisoner sustains a physical injury. <u>See, e.g.</u>, <u>Farmer</u>, 511 U.S. at 828 ("A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment."); 28 U.S.C. § 1346(b)(2) ("No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ."); 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .").

That Plaintiff's excessive force claim implicates the same constitutional amendment as did the plaintiff's deliberate indifference claim in <u>Carlson</u>, while not solely determinative, cannot be disregarded, as Defendants suggest. On this point, the Court finds persuasive a district court order from this Court's Ocala Division, <u>Rivera v. Lebron</u>, No. 5:15-cv-317-RBD-PRL, Doc. 103 (M.D. Fla. Oct. 29, 2021) (Ocala Order). In that case, a federal prisoner alleged correctional officers used excessive force against him when they were trying to prevent him from disposing of contraband. Ocala Order at 2. The plaintiff offered evidence showing officers caused him serious injuries. <u>Id.</u> at 4-5.

In <u>Rivera</u>, the court found the plaintiff's claim, though "not identical to the deliberate claim in <u>Carlson</u>," did not arise in a new context. <u>Id.</u> at 11. The court was unpersuaded by an argument that a "divergent legal theor[y] or factual scenario[]" created a meaningful distinction between the excessive force claim raised there and the deliberate indifference claim raised in <u>Carlson</u>. <u>Id.</u> at 12. The court explained, "under either theory . . . an inmate must establish . . . both an objective deprivation or injury and a subjectively culpable state of mind." Ocala Order at 13 (citing <u>Thomas v. Bryant</u>, 614 F.3d 1288, 1304 (11th Cir. 2010); <u>Swain v. Junior</u>, 961 F.3d 1276, 1285 (11th Cir. 2020)).

Defendants also rely heavily on a Fifth Circuit opinion, which held a plaintiff's Fourth Amendment unlawful arrest claim presented a new context because it was different in "several meaningful ways" from the Fourth

10

Amendment claim presented in <u>Bivens</u>. <u>See</u> Def. Motions at 5 (citing <u>Byrd v. Lamb</u>, 990 F.3d 879, 882 (5th Cir. 2021)). In declining to extend a damages remedy in <u>Byrd</u>, the Fifth Circuit emphasized significant differences between that plaintiff's Fourth Amendment claim and the Fourth Amendment claim in <u>Bivens</u>: the location of the arrest (public property in <u>Byrd</u> versus private property in <u>Bivens</u>); the nature and extent of the personal invasion (threats and brandishing of a weapon in <u>Byrd</u> versus a warrantless arrest followed by manacling the plaintiff in front of family and then later strip-searching him in <u>Bivens</u>); and the nature of the dispute (personal in <u>Byrd</u> versus official in <u>Bivens</u>). <u>Id.</u>[7]

The undersigned finds the Fifth Circuit opinion inapposite. The factual differences the <u>Byrd</u> court highlighted were material in the context of the constitutional analysis presented in that case as compared to the context presented in <u>Bivens</u>. For instance, in the Fourth Amendment context, it is relevant whether a person is inside his home or on public property when officers encounter him. <u>See, e.g.</u>, <u>Florida v. Jardines</u>, 569 U.S. 1, 6 (2013) ("[W]hen it comes to the Fourth Amendment, the home is first among equals."). In the context of prisoners' rights, however, it is well "settled that the

---

[7] The plaintiff in <u>Byrd</u> filed a petition for writ of certiorari with the Supreme Court, which the Court has distributed for conference. <u>See</u> U.S. Supreme Court Case No. 21-184 (filed Aug. 10, 2021).

treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," and that scrutiny is similar regardless of the precise theory under which a plaintiff proceeds. Farmer, 511 U.S. at 832 (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)). The Supreme Court explained in Farmer that the Eighth Amendment broadly prohibits cruel and unusual punishments, regardless of the form those "punishments" may take:

> In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates[.]"

Id. (internal citations omitted).

The Supreme Court also has suggested in dicta that a Bivens remedy would extend to an Eighth Amendment claim by a federal prisoner against a federal officer regardless of the precise theory underlying the claim. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a[n Eighth Amendment] deprivation, he may bring a Bivens claim against the offending individual officer, subject to the defense of qualified immunity."). See also Minneci v. Pollard, 565 U.S. 118, 126 (2012) (holding the

employment status of the defendant—a private company versus the federal government in <u>Carlson</u>—was a "critical difference" in the analysis whether a <u>Bivens</u> remedy would extend to a prisoner's claim that a privately operated prison violated his Eighth Amendment rights).

For the reasons articulated, the Court finds Plaintiff's excessive force claim does not present a new <u>Bivens</u> context. Finding as much, the Court is not required to proceed to the second step in the <u>Ziglar</u> analysis. However, in an abundance of caution, the Court will do so.

### ii.    Special Factors

Defendants argue Plaintiff's access to the BOP's grievance procedure and his ability to file suit against the United States under the FTCA are factors that counsel hesitation in extending a <u>Bivens</u> remedy here. Def. Motions at 8-9. The Supreme Court has not defined the phrase, "special factors counseling hesitation," though in prior decisions where the Court declined to extend <u>Bivens</u> remedies to new contexts, it found significant that the plaintiff(s)/claimant(s) had alternative avenues through which they could seek administrative or judicial relief for the alleged constitutional violation(s). <u>See</u> <u>Bush v. Lucas</u>, 462 U.S. 367, 390 (1983) (Marshall and Blackmun, J., concurring) (noting the case would have been different "if Congress had not created a comprehensive scheme that was specifically designed to provide full compensation to civil service employees who are discharged or disciplined in

violation of their First Amendment rights"); <u>Chappell v. Wallace</u>, 462 U.S. 296, 302 (1983) ("Military personnel, for example, may avail themselves of the procedures and remedies created by Congress in . . . the Uniform Code of Military Justice."); <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 425-26 (1988) (listing the numerous laws Congress passed to protect "persons affected by incorrect [social security] eligibility determinations"); <u>Malesko</u>, 534 U.S. at 72 (noting the claimant conceded at oral argument that "alternative remedies" were available, including a state-court negligence suit); <u>Wilkie v. Robbins</u>, 551 U.S. 537, 553 (2007) (noting the plaintiff had administrative and judicial processes available to him for "virtually all of his complaints"); <u>Minneci</u>, 565 U.S. at 125-26 (finding the availability of state tort law or administrative remedies provided a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages"); <u>Ziglar</u>, 137 S. Ct. at 1862-63 (noting the alien detainees could have sought injunctive or habeas relief).

For the reasons cogently and persuasively offered in the <u>Rivera</u> order, the Court disagrees that the BOP grievance procedure or a claim under the FTCA provide sufficient alternatives for a prisoner to seek redress for an alleged Eighth Amendment violation. <u>See</u> Ocala Order at 15-23. The Court emphasizes some key considerations from the <u>Rivera</u> order. Notably, the Supreme Court itself has held "the FTCA is not a sufficient protector of the citizens' constitutional rights," at least in the context of a prisoner who suffers

physical injury or death as a result of a federal officer's violation. <u>Carlson</u>, 446 U.S. at 23. In <u>Carlson</u>, the Court observed, "nothing in the [FTCA] or its legislative history . . . show[s] that Congress meant to pre-empt a <u>Bivens</u> remedy or to create an equally effective remedy for constitutional violations." <u>Id.</u> at 19. In fact, the Court noted, when Congress amended the FTCA in 1974— after <u>Bivens</u> was decided—the congressional comments "made it crystal clear that" the relevant provision "should be viewed as a counterpart to the <u>Bivens</u> case and its [progeny]." <u>Id.</u> (quoting S. Rep. No 93-588 at 3).

Second, a <u>Bivens</u> claim is intended to deter federal officials from exceeding their authority. <u>Id.</u> at 21. Neither the BOP nor the FTCA has such a direct deterrent effect on individual federal officers, who are subject to "personal financial liability" under <u>Bivens</u>. <u>Id.</u> <u>See also</u> <u>Minecci</u>, 565 U.S. at 126 (finding significant that the defendant was a private company in refusing to extend a <u>Bivens</u> remedy because the plaintiff, a prisoner, could pursue a negligence action in state court, whereas federal prisoners "ordinarily <u>cannot</u> bring state-law tort actions against federal employees (emphasis in original)).

The Supreme Court also has observed that Congress, in enacting the Prison Litigation Reform Act (PLRA), intended that its exhaustion requirement would apply not only to state prisoners suing under § 1983 but also to federal prisoners suing under <u>Bivens</u>. <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002) ("[U]nlike the previous provision, which encompassed only § 1983

suits, exhaustion is now required for all 'action[s] ... brought with respect to prison conditions,' whether under § 1983 or 'any other Federal law.'").[8] In holding that the PLRA exhaustion requirement applies to all suits about prison life, regardless of whether brought by state prisoners or federal prisoners, the Court noted it "generally presume[s] that Congress expects its statutes to be read in conformity with th[e] Court's precedents." Id. at 528 (quoting United States v. Wells, 519 U.S. 482, 495 (1997) (alterations in original)).

In sum, even if the Court were to conclude Plaintiff's excessive force claim arises in a new context under Bivens, the Court finds no special factors would counsel hesitation in extending a Bivens remedy here.[9]

---

[8] The 1994 edition of § 1997e did not include the language "or any other Federal law," but only applied to actions "brought pursuant to section 1983." 42 U.S.C. § 1997e (effective to Apr. 25, 1996).

[9] The Court is aware that judges in the Middle District of Florida have reached the opposite conclusion on this issue. Crocker v. USP 1 Coleman, No. 5:20-cv-568, 2022 WL 272173, at *4-5 (M.D. Fla. Jan. 6, 2022) (declining to extend a damages remedy in an excessive force case because the facts were different than those in Carlson, and the prisoner had alternative means to seek redress, including through the BOP's grievance procedure and an action against the United States under the FTCA); Vasquez v. Cheatham, No. 5:21-cv-489-WFJ-PRL, 2021 WL 5826236, at * 4-5 (M.D. Fla. Dec. 8, 2021) (dismissing a plaintiff's excessive force claim because it presented a new context and special factors counseled hesitation in extending a Bivens remedy). See also Taylor v. Lockett, No. 5:17-cv-23-Oc-02PRL, 2019 WL 764023, at *6-7, 9 (finding a Bivens remedy did not extend to the plaintiff's First Amendment retaliation claim or his Eighth Amendment sexual assault claim).

### B. Qualified Immunity

Defendants invoke qualified immunity, asserting Plaintiff fails to state a plausible Eighth Amendment violation against them. Def. Motions at 10. Defendants Davis and Wise contend Plaintiff wholly fails to lodge any allegations against them, see Blackmon Motion at 11-12; Wise Motion at 11-12, while Defendant Blackmon contends Plaintiff does not allege Blackmon "acted sadistically and maliciously for the purpose of causing harm," see Blackmon Motion at 12.

An officer sued in his individual capacity "is entitled to qualified immunity for his discretionary actions unless he violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows officers to exercise their official duties without fear of facing personal liability. Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. Id.

Upon asserting a qualified immunity defense, a defendant bears the initial burden to demonstrate he was acting in his discretionary authority at the relevant times. Dukes v. Deaton, 852 F.3d 1035, 1041-42 (11th Cir. 2017). Defendants carry their burden. Thus, the burden shifts to Plaintiff to point to

allegations demonstrating the violation of a clearly established constitutional right. Alcocer, 906 F.3d at 951. "Because [Bivens] 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." Id. (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam)).

Plaintiff does not allege Defendants Wise or Davis personally used force against him or were present when Defendant Blackmon allegedly attacked him. See Am. Compl. at 5. In fact, Plaintiff does not assert Defendants Wise or Davis did anything that could liberally be construed as a constitutional violation. On the contrary, Plaintiff alleges Defendant Wise summoned Defendant Blackmon to extract Plaintiff from his cell to bring him to medical because he was having chest pains. Id. Because Plaintiff does not state a claim against Defendants Wise or Davis, they are entitled to qualified immunity.

However, Plaintiff alleges Defendant Blackmon entered his cell and assaulted him so badly that Blackmon broke his arm in two places—all while he was having a heart attack. Id. The Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987). Plaintiff alleges Defendant Blackmon assaulted him for no reason. As

such, Plaintiff states an Eighth Amendment violation, and Defendant Blackmon is not entitled to qualified immunity at this juncture. See Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002) ("In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution.").

Plaintiff does not use the terms "maliciously" or "sadistically" in describing Defendant Blackmon's conduct, but magic words are not required to state a plausible claim for relief. Notably, Plaintiff does not allege he was acting out or disobeying orders, which may have prompted Defendant Blackmon to use some force against him. Cf. Whitley v. Albers, 475 U.S. 312, 320 (1986) (noting officers are justified in using some force when necessary "to maintain or restore discipline"). Liberally construing Plaintiff's allegations, as this Court must do, the Court finds Plaintiff alleges facts that, accepted as true, permit the reasonable inference Defendant Blackmon violated his constitutional rights. Thus, the claim may proceed.

Accordingly, it is

ORDERED:

1.    Defendants Blackmon and Davis's motion to dismiss (Doc. 48) is **GRANTED in part and DENIED in part**. The motion is **GRANTED** to the extent Defendant Davis is entitled to qualified immunity for Plaintiff's failure

to state a plausible claim against Davis; Plaintiff's official-capacity claims are dismissed; and Plaintiff's requests for injunctive relief are dismissed. The motion is **DENIED** to the extent Plaintiff's excessive force claim against Defendant Blackmon survives.

2.      Defendant Wise's motion to dismiss (Doc. 57) is **GRANTED**.

3.      The **Clerk** is directed to terminate Defendants Davis and Wise as parties to this action.

4.      Defendant Blackmon must answer the amended complaint within **twenty days** of the date of this Order. The Court will thereafter set a discovery period and other deadlines.

5.      Within **fifteen days** after the close of discovery, Plaintiff must provide Defendant Nurse Mathew's full name or other identifying information to enable the United States Marshals Service to serve Defendant Mathews. If Plaintiff is unable to identify Defendant Mathews for service by this deadline, the Court will dismiss Defendant Mathews from this action.

      **DONE AND ORDERED** at Jacksonville, Florida, this 30th day of March, 2022.

_____
      BRIAN J. DAVIS
      United States District Judge

Jax-6 3/30
c:    Reco Valarie Cauthen
      Counsel of Record